# WAITE v. LAROCQUE.

EQUITY PRACTICE; PARTIES; TRUSTS.

Where the founders of a trust fund created for the benefit of the widow and family of a decedent provide that upon the death of the widow the fund, or the balance of it then remaining, shall be paid over as she may by her last will and testament direct, and the widow dies and by her will seeks to exercise such power of appointment by bequeathing the use and income of the fund to her daughter (who is named as executrix) while she remains unmarried, and upon her death or marriage so disposing of the fund as to give other persons an interest in it, such other persons are necessary and indispensable parties to a bill filed by the daughter, as executrix, against the trustees of the fund to require them to deliver the fund to her; and the bill is demurrable if such other persons are not made parties; the Chief Justice *dissenting*.

No. 750. Submitted January 7, 1898. Decided March 22, 1898.

HEARING on an appeal by the complainant from a decree sustaining a demurrer to and dismissing a bill for want of necessary parties. *Modified and affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Samuel F. Phillips* and *Mr. Frederic D. McKenney* for the appellant:

1. The beneficial interest a man takes under the execution of a power forms part of his estate, and is, according to the nature of the property, subject to his debts like his other property; nor, indeed, can an appointment be made so as to protect the funds from the debts of the appointee. But equity goes a step farther, and holds that where a man has a general power of appointment over a fund, and he actually exercises his power, whether by deed or will, the property appointed shall form part of his assets, so as to be subject to the demands of his creditors, in preference to the claims of his legatees or appointees. 2 Sugden on Powers, 20.

See, also, Williams on Executors, Pt. 4, Bk. 1, Ch. 1, entitled "Of Personal Assets, Legal or Equitable," at p. 1435.

2. The directions given by Mrs. Waite in regard to the fund in question constitute the latter a part of the assets of her estate. The present bill has been brought to reduce these into possession. The record shows that the defendants concede that the executrix is a proper party, and place their objections to the frame of the bill solely upon the circumstance that she has not joined with herself as complainants certain persons who are entitled to remainders in the beneficial interest after that to which the complainant is also entitled under her mother's will. We submit that the well-established rule of procedure is, "that the personal representative in all cases represents the personal estate of the deceased, and is entitled to sue for it in equity as well as at law, without making the residuary legatees, or any other persons interested in it, parties to the suit." Daniel, Ch. Pl., &c., 270.

*Mr. J. Hubley Ashton* for the appellees:

1. The question whether or not the persons mentioned in the demurrer are indispensable parties, or at least so far necessary that the cause should not go on in their absence, involves the inquiry whether the court can proceed to a decree as between the present parties, and do complete and final justice, without affecting the rights of those absent persons, or leaving the controversy in such a condition that its final termination might be wholly inconsistent with equity and good conscience. *California* v. *Southern Pacific Co.*, 157 U. S. 248–251. Indispensable parties are those who not only have an interest in the controversy, but an interest of such a nature that a final decree can not be made in the suit without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. *Shields* v. *Barrow*, 17 How. 130; *Coiron*

v. *Millaudon*, 19 How. 113; *Barney* v. *Baltimore*, 6 Wall. 284; *Ribon* v. *Railroad Companies*, 16 Wall. 450; *Williams* v. *Bankhead*, 19 Wall. 571; *Kendig* v. *Dean*, 97 U. S. 423; *McArthur* v. *Scott*, 113 U. S. 391; *Gregory* v. *Stetson*, 133 U. S. 586.

2. The rights of these absent persons in, and in respect to, this fund, and its administration, will be directly affected by a decree taking the property out of the hands of the trustees designated to hold it during the spinsterhood or life of the complainant, and transferring it to her, *virtute officii*, as general assets, legal or equitable, of the testatrix, which became such, as against the absent persons, through the exercise by the testatrix of her power of disposal, in their favor, in the manner provided in her will.

3. The complainant, as executrix, is not the representative in any manner of the interests of the other members of the family or identified in interest with them as respects the object of the bill and the relief sought by it, but claims in effect adversely to them in the suit. *McArthur* v. *Scott*, 113 U. S. 391. Under the will of Mrs. Waite, as is supposed, her daughters-in-law and grandchildren have vested interests in this fund, although the time of enjoyment will not arrive until a division of the estate occurs, when the trust of the defendants will cease. *Thaw* v. *Ritchie*, 136 U. S. 519, 546; *Doe* v. *Considine*, 6 Wall. 458, 476; *Ferson* v. *Dodge*, 23 Pick. 287. The interests of the legatees were intended to vest from the death of the testatrix. It is difficult, therefore, to perceive how a decree upon the bill in respect to the estate supposed to be created in the complainant by the exercise of the power of appointment could bind these absent persons; and if it could not, the court can not for that very reason render any decree as between the present parties to the record. *Barney* v. *Baltimore*, 6 Wall. 285.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from a decree of the Supreme Court of

the District of Columbia, dismissing without prejudice, a bill of complaint upon the interposition of a demurrer thereto based upon the allegation that necessary parties had not been made thereto.

On or about April 5, 1888, upon the death of the late Chief Justice of the Supreme Court of the United States, Morrison R. Waite, a fund of $21,000 was raised in the city of New York for the benefit of his widow and family. By the terms of the subscription paper it was placed in the hands of the appellees, Joseph Larocque, George Hoadley and Charles C. Beaman, as trustees, to be invested by them, and to apply the income and principal or any part thereof in their absolute discretion to the use and benefit of the widow or family of the late Chief Justice Waite, and upon the death of his widow to pay over whatever balance might remain as she should, by her last will and testament, direct; and in case of failure of such direction, then to pay over and distribute such balance to and among such of the next of kin of said Chief Justice Waite and in such amounts as the said trustees should in their absolute discretion think proper.

The fund was invested and the income thereof was promptly and faithfully paid to Mrs. Amelia C. Waite, the widow of the Chief Justice, as long as she lived. Mrs. Waite, who was a resident of the District of Columbia, died on or about February 21, 1896, leaving a will executed on or about December 26, 1888, and duly admitted to probate by the Supreme Court of the District of Columbia, on March 18, 1896, whereby, among other devises and bequests, she sought to execute the power of appointment reserved to her in the trust creating the fund in question, and to dispose of that fund and of another similar fund in the hands of Mr. Justice Blatchford. The portion of her will by which she sought to make this disposition is as follows:

"Second. I also give, devise and bequeath to my said daughter, Mary Frances Waite, if she survives me, the use and income of all the property which I may possess at the

time of my decease, which came to me by the will of my late husband, so long as she, my said daughter, lives and remains unmarried. I also give, devise and bequeath to my said daughter, Mary Frances Waite, if she survives me, the use and income, so long as she, my said daughter, lives and remains unmarried, of the fund collected in the city of New York for the use and benefit of the widow or family of the late Chief Justice Waite, and which, by the paper under which it was subscribed, was placed in trust in the hands of Messrs. Joseph Larocque, George Hoadley and Charles C. Beaman, and the balance of which it was prescribed by said paper that, upon the death of his widow, they should pay over as she should, by her last will and testament, direct; and also of the other fund collected for the use and benefit of said widow or family of the late Chief Justice Waite, and placed in the hands of Samuel Blatchford, an associate justice of the Supreme Court of the United States, and held and invested by him. In case my said daughter shall be married at the time of my decease, or in case she shall be married after my decease, then it is my wish, and I direct, that the money and securities which shall then constitute the said two funds, and the property mentioned in this clause of my will which came to me by will from my late husband, or such part thereof as my said daughter may have at the time of her marriage, if married after my decease, be divided into four equal parts or shares, one of which parts or shares I give, devise and bequeath to my said daughter, Mary Frances Waite, to be her own separate property—to have and to hold the same to her, her heirs and assigns forever. The three parts or shares thereof remaining I give, devise and bequeath as follows, viz: One part or share thereof to my daughter-in-law, Ione B. Waite, the widow of my deceased son, Henry S. Waite, of Toledo, Ohio, in trust for her own separate use during her natural life; one part or share thereof to my daughter-in-law, Lillian G. Waite, the wife of my son, Christopher C. Waite, of Cin-

cinnati, Ohio, in trust for her own separate use during her natural life; and one part or share thereof to my daughter-in-law, Anna C. Waite, the wife of my son, Edward T. Waite, of Toledo, Ohio, in trust for her own separate use during her natural life. At the death, respectively, of my said daughters-in-law, whether before or after such division, I direct that the share or part of my estate devised to each of them, as aforesaid, be distributed and paid to their respective children, the issue of marriage with my sons aforesaid, according to the present laws of descent and distribution of the State of Ohio, to be held by such children, their heirs and assigns, forever. Whenever my said daughter shall die, unmarried, then it is my wish, and I direct, that the property mentioned in this clause of my will, which came to me by will from my late husband, or such part thereof as my said daughter may have at the time of her death, and the money and securities which shall then constitute the said two funds, be divided into three equal parts or shares, which I give, devise and bequeath as follows, viz: One part or share thereof to my daughter-in-law, Ione B. Waite, the widow of my deceased son, Henry T. Waite, of Toledo, Ohio, in trust for her own separate use during her natural life; one part or share thereof to my daughter-in-law, Lillian G. Waite, the wife of my son, Christopher C. Waite, of Cincinnati, Ohio, in trust for her own separate use during her natural life; and one part or share thereof to my daughter-in-law, Anna C. Waite, the wife of my son, Edward T. Waite, of Toledo, Ohio, in trust for her own separate use during her natural life. At the death, respectively, of my said daughters-in-law, whether before or after such division, I direct that the share or part of my estate devised to each of them as last aforesaid, be distributed and paid to their respective children, the issue of their marriage with my sons aforesaid, according to the present laws of descent and distribution of the State of Ohio, to be held by such children, their heirs and assigns, forever.

"If, from any cause, the income and use of the property devised by me, as aforesaid, to my said daughter, Mary Frances Waite, shall not be sufficient for her comfortable support and maintenance, it is my wish, and I direct, that she use so much of the principal thereof as she may consider necessary for her support and maintenance, so long as she lives and remains unmarried."

The son of the testatrix, Christopher C. Waite, and the aforesaid daughter, Mary Frances Waite, were made executors of the will, and the former dying about the same time as his mother, the daughter, Mary Frances Waite, alone qualified as executrix, and received letters testamentary upon the estate. She remained and yet remains unmarried.

Considering that, in consequence of the general power of appointment vested in her and the full exercise of that power by the testatrix, the fund in question became a portion of the general assets of her estate, of which the executrix was entitled to take possession and dispose, the executrix made demand upon the trustees of the fund to deliver it up to her, and upon their refusal to do so without some order of a court, she filed the present suit in the Supreme Court of the District of Columbia, sitting as a court of equity, for the purpose of requiring them to deliver the fund to her.

The suit is understood to be entirely amicable, for the purpose of determining the complainant's rights in the premises, and for that reason, we presume, the defendants, who are all residents of the City and State of New York, where the fund was raised and is held, have consented for the convenience of the complainant to be sued in the courts of the District of Columbia. But they do not consent to the form of the bill of complaint filed by the appellant. On the contrary, they object to it as being insufficient, from the absence or omission of necessary and proper parties, to relieve them from future liability. For that reason, as it appears from the bill of complaint and the exhibits

annexed to it, that there are other parties in interest besides the complainant and the trustees, they have filed a demurrer to the bill on the ground of this omission. This demurrer was sustained in the court below, with leave to the complainant to amend the bill by making the proper parties; but this she declined and refused to do, and thereupon a decree was entered, dismissing the bill, without prejudice, from which the complainant has appealed to this court.

Why the complainant should not have made the proper parties in the first instance, when it was so very obvious that there were other parties proper to be introduced into the case for the protection of their own interests; or why, when the demurrer based upon the omission of such parties was sustained, she still refused to give those parties the opportunity of being heard in the cause, is not quite apparent to us. That the daughters-in-law and grandchildren of the testatrix, Amelia C. Waite, to whom that lady in her will attempted to convey a residuary interest in the fund in question, were at least proper parties to the suit as defendants, if not absolutely necessary parties, is beyond question; and the trustees for their own protection were entitled to have them brought in. There are important questions involved in the case which would make it eminently right and proper that all parties whose interests would in any manner be affected by a decision in the case should be before the court. Still, it is the right of the complainant, if she so elects, to insist upon the distinction in equity between necessary and proper parties, and to claim that the persons suggested by the demurrer as necessary parties are not such, but at most only proper parties, who may be omitted without prejudice to the complainant to have the rights claimed by her established as against the trustees of the fund. And this is the only question before us for determination. The arguments and briefs of counsel in the case are in great part devoted to the consideration of the main

issue sought to be raised by the bill of complaint—that is, the question whether the complainant, as executrix of her mother's last will and testament, is entitled to take possession of the fund in controversy as part of the general assets of her mother's estate. But this issue we do not regard as now involved, except incidentally. The question made by the pleadings is whether the parties necessary for the determination of that issue are before the court.

The distinction in equity between necessary parties and proper parties is well established. The question was discused at considerable length by the Supreme Court of the United States in the case of *Shields* v. *Barrow*, 17 How. 130; and there, and in the subsequent cases of *Ribon* v. *Railroad Co.*, 16 Wall. 446, and *Gregory* v. *Stetson*, 133 U. S. 579, and others which it is unnecessary to cite, the rule was laid down that all persons whose interests would be affected by a decree of the court in the cause must be made parties to the suit; and we do not understand that this rule, based upon elementary principles of equity and supported by all the text books, has ever been departed from in any manner, except in as far as under the rules of the Supreme Court provided for the courts of equity of the United States, trustees for real estate have been held to represent their beneficiaries. Under this rule, the only inquiry left for us is whether the interests of the parties omitted from the bill of complaint before us and suggested by the demurrer as indispensable parties, are such as that they would necessarily be affected by the decree sought by the complainant. And to this inquiry it seems to us that the answer is not doubtful. Not only would those interests be materially and vitally affected by the decree, but they are the only interests that would be so affected. The trustees have no interest whatever in the premises, and they claim none. They are simply stakeholders, ready and desirous to turn over the fund to the person or persons entitled to receive it from them. And if they can be held to represent any

interest other than their own, it is equally the interest of the complainant and of the omitted parties.

If the claim of the complainant be well founded, that by the exercise by the testatrix of the power of appointment vested in her for the disposition of the fund in the hands of the defendants, that fund thereupon became part of the general assets of her estate, subject to be disposed of for the payment of debts and for any other purpose for which general assets may be available, of the validity of which claim we desire distinctly to state that we express here no opinion, notwithstanding that it has been elaborately argued by counsel, most assuredly the establishment of that claim by a decree of the court would most materially affect the interests of the omitted parties. In fact, it would destroy those interests; for its practical effect would be to nullify the express provisions of the will of the testatrix in regard to them, under the application of a technical rule of law supposed to be of paramount authority. That rule of law, if it is the rule in the District of Columbia, is not so well established as that persons interested for or against it should not be heard upon the subject. Nor is it entirely clear that, if it be the rule in the District of Columbia, this fund, created in the State of New York, and having a certain *situs* in that State, should be governed by it.

The complainant's claim evidently contravenes the manifest purpose and plain intention of the testatrix, as expressed in her will. The contention is, in substance, that the testatrix, by the very act by which she created, or attempted to create, these interests under the power of appointment, at the very same moment destroyed them by the operation of a rule of law. We do not say that this is not the result of her action. But we do say that, under circumstances like the present, it is the plain dictate of the most elementary principles of justice and equity, that parties should be heard in defence of their apparent rights before those apparent rights are decreed to be a mere nullity.

It has been suggested that the trustees may be assumed to represent the omitted parties. But plainly this suggestion is without force. The trustees no more represent these parties than they do the complainant. So far as at present they are trustees at all, they are equally trustees for both. They have, in fact, no interest but to deliver the fund to the parties entitled, or to hold it for the benefit of such parties. They can represent no one in this case but themselves. In view of the fact that the only antagonism thus far elicited in this case is between the interest claimed by the complainant and the interest apparently vested in the omitted parties, a bill, wherein those parties were introduced and the trustees omitted, could more properly be sustained than the present proceeding.

Equally inapplicable in the present case is the rule "that the personal representative in all cases represents the personal estate of the deceased, and is entitled to sue for it in equity as well as at law, without making the residuary legatees or any other persons interested in it parties to the suit." Daniell's Chancery Pleading and Practice, p. 270. This is undoubtedly a correct statement of the law; but here it begs the question. For the fundamental question in this case is whether the fund in controversy has, in consequence of the exercise by the testatrix of a general power of appointment vested in her, become part of the assets of the estate of the testatrix, so as to be subject to be reduced into possession by the executrix and paid out by her in the due course of administration in payment of debts and legacies, and for any other proper purpose for which administration is authorized. It is not a case in which the complainant seeks to have herself substituted as trustee of the fund in the place of the defendants, which would present a very different case from the present, but one in which we think these omitted parties would equally be entitled to be heard. Nor is it a case in which she is seeking to get possession of the fund in pursuance of the power of appointment giving her

the use and income of it during life or as long as she re-
mains unmarried; for this would not be a suit by her as
executrix, but a suit in her own right.   The whole gist of
the present suit is that the appellant, as executrix of her
mother's estate, is entitled to receive the fund as part of the
assets of that estate, to be disposed of like any other assets
of the estate in the course of administration.   Undoubtedly
this would be her right, if the doctrine prevails in the Dis-
trict of Columbia that the testatrix, by the exercise of the
general power of appointment, converted this fund into
assets of her estate, and that there is nothing in the circum-
stances of the case to prevent the application of that doc-
trine; such as, for example, that the fund was raised and is
held in another jurisdiction, and that presumably the trust
in regard to it was declared with reference to the laws of
that jurisdiction, which may be different from our own.
On the other hand, if that doctrine is not part of our settled
law, or if the circumstances of the case preclude its applica-
tion in the present controversy, the appellant is not entitled
to the fund as executrix.

Now, it is very plain that the determination of this ques-
tion in this instance is no more and no less than a deter-
mination of the question whether these omitted parties have
any rights in the premises.   If they have rights, then
undoubtedly the appellant has no right as executrix to
claim the fund.   If they have no rights, that of the appel-
lant as executrix is complete.   The real question in the
case is whether under the circumstances these omitted par-
ties have any rights.   How are the courts, with any sem-
blance of justice or propriety, to adjudicate that question
without giving these omitted parties an opportunity to be
heard?   How are the courts of the District of Columbia to
give to the defendant trustees the benefit of their adjudica-
tion as a protection against possible proceedings against
them hereafter by these omitted parties in the courts of the
State of New York?   It would seem to be absurd to regard

the appellant as the representative of interests which it is the sole purpose of her suit to destroy.

It is possible that, upon a final hearing and with all the proper parties before the court, the appellant may be entitled to the relief which she seeks.   But of that we express no opinion; nor has the question been here considered at all by us.   What we decide is that it does not seem proper to us to consider that question until the proper parties are before the court.

We think that the decree of the Supreme Court of the District of Columbia in the premises was right, and that it should be affirmed, with costs.   But, in view of all the circumstances of the case, the appellant, notwithstanding her refusal so to do in the court below, may still be admitted to make the proper parties to her suit, and the decree may be modified and reopened for that purpose, if within ten days she will signify her purpose to that effect.   Otherwise, the decree appealed from will be, and it is hereby, affirmed, with costs.   *And it is so ordered.*

Mr. Chief Justice ALVEY dissenting:

I am of opinion in this case that the bill of complaint ought not to have been dismissed by the court below, and therefore I can not concur in the conclusion of my brothers in affirming the order appealed from.   The demurrer to the bill by the trustees was simply for the supposed want of necessary parties; and while it may be conceded (though not admitted by me) that the persons mentioned in the demurrer would be proper parties to the bill, if they resided in this District and were subject to the jurisdiction of the court, yet being beyond the jurisdiction of the court, unless they were shown to be *necessary parties,* I do not think their absence furnishes ground for demurrer, and upon which the bill should be dismissed.   Indeed, for any practical, beneficial purpose, it is difficult to see that the persons referred to in the demurrer would even be proper

parties to this bill.   The bill is not for an account and distribution of the fund, but only to obtain possession of the fund from the original trustees, by the party entitled to receive it; and the bill does not seek to obtain any other decree than that to direct the trustees to pay over the fund to the complainant, and to authorize her to receive and give full and effective acquittance to the trustees.   There is no action asked of the court that would in any manner conclude or affect the rights of the parties that may be interested in the remainder of the fund; and therefore they are not necessary or even proper parties to this cause.

The bill is filed by Miss Mary Frances Waite, sole executrix of the will of her mother, Mrs. Amelia C. Waite, the widow of the late Chief Justice Waite, against Joseph Larocque, George Hoadley and Charles C. Beaman, of the State of New York, as trustees, and by the bill the circumstances under which the trust fund here involved was created are fully stated.   Mrs. Waite, the widow, died some years after the death of her husband, leaving a will, by which she disposed of the fund as she was empowered to do, and her daughter, the present complainant, is the sole executrix of that will; and the daughter has obtained probate of the will, and has duly qualified as executrix thereof; and, on the facts stated in the bill, she prays that the trustees may answer, and that a decree may be passed requiring the trustees to deliver to her the fund or the securities for the same, *and that she may have such other and further relief* as to the court in the premises may seem right and proper.   To the bill the trustees have voluntarily appeared, and instead of making answer to the facts alleged, they have interposed a demurrer to the bill for want of parties thereto.

Whether there be sufficient ground for the demurrer depends upon the terms of the original declaration of trust, and the limitations contained in the will of Mrs. Waite, in execution of the power given her to dispose of the trust fund.

By the terms of the original declaration of trust, it is declared that the trust fund "shall be held by the trustees and their survivors and successors in trust, to apply the *income and principal, or any part thereof,* in their absolute discretion, to the use and benefit of the widow or family of the late Chief Justice Waite, and, upon the death of his widow, to pay over whatever balance may remain *as she shall by her last will and testament direct.*" This was a general power of disposition, with the *single restriction that it should be exercised only by last will and testament.* In that mode she was authorized to dispose of the fund as if it were *her own absolute estate.*

By the last will and testament of Mrs. Waite, the widow of Chief Justice Waite, she disposed of this fund, with other property, in the following terms: ·

"I also give, devise and bequeath to my said daughter, *Mary Frances Waite,* if she survives me, the use and income, so long as she, my said daughter, lives and remains unmarried, of the fund collected in the city of New York for the use and benefit of the widow or family of the late Chief Justice Waite, and which, by the paper under which it was subscribed, was placed in trust in the hands of Messrs. Joseph Larocque, George Hoadley, and Charles C. Beaman, and the balance of which it was prescribed by said paper that, upon the death of his widow, they should pay over as she should, by her last will and testament, direct; and also of the other fund collected for the use and benefit of said widow or family of the late Chief Justice Waite, and placed in the hands of Samuel Blatchford, an associate justice of the Supreme Court of the United States, and held and invested by him. In case my said daughter shall be married at the time of my decease, or in case she shall be married after my decease, then it is my wish, and I direct, that the moneys and securities which shall then constitute the said two funds, and the property mentioned in this clause of my will which came to me by will from my late husband,

or such part thereof as my said daughter may have at the time of her marriage, if married after my decease, be divided into four equal parts or shares, one of which parts or shares, I give, devise and bequeath to my said daughter, *Mary Frances Waite*, to be her own separate property; to have and to hold the same to her, her heirs and assigns forever. The three parts or shares thereof remaining I give, devise, and bequeath as follows, viz."

Then follow the bequests of the three remaining shares or parts to the three daughters-in-law of the testatrix and their children.

By a subsequent clause of the will, it is provided that " if, from any cause, the income and use of the property devised by me, as aforesaid, to my daughter, *Mary Frances Waite*, shall not be sufficient for her comfortable support and maintenance, it is my wish, and I direct, that she use so much of the principal thereof as she may consider necsssary for her support and maintenance, so long as she lives and remains unmarried. It is also my wish, and I request and direct, that my said daughter *shall have absolute control of all the property devised to her by this, my will*, and that no part thereof shall at any time be subject to the payment of any debts of any husband she may have, or in any manner be under the control of any husband she may have during her lifetime."

There would seem to be no ground for reasonable doubt that Mrs. Waite intended that her daughter should have the possession, control and full enjoyment of the fund during her life, or until she should marry, and that the trustees should pay over to her the fund. It was clearly not intended by Mrs. Waite, nor was it intended by the founders of the fund, that the trustees should continue to hold and administer the fund beyond a reasonable time after the death of Mrs. Waite, or the probate of her will. They have a right to be discharged of their trust, and the question is, whether Miss Mary Frances Waite, the appointee of the fund for

life, or as long as she remains unmarried, and the sole executrix of her mother's will, has a right to receive the fund and give a valid and effective acquittance therefor to the trustees? The trustees, as I understand from counsel, are only concerned and desirous to pay over the fund in accordance with the direction of the will of Mrs. Waite, and to be legally discharged from their duties as trustees. I can not see or appreciate the supposed difficulty in paying over the fund to the complainant. She can, according to my judgment, receive the fund and give a valid acquittance therefor, and she would hold and control it under her mother's will, in a *dual capacity*; first, in her own right as appointee under the will, during her life or until married, and, secondly, by virtue of her appointment and qualification as executrix of the will, she would hold what may remain of the fund, as trusten for those in remainder. This would seem to be the right and justice of the matter, and I think it is in accordance with well settled precedent and authority.

In the case of *In re Philbrick's Settlement,* 34 L. J. (Ch.) 368, this question seems to have been directly presented to Lord Romilly, M. R., who was a great master of chancery jurisprudence, and of all the practice that obtained in its administration. In that case, the power given to the testatrix was a general power of appointment, and she executed the power in favor of several persons, and appointed executors. Lord Romilly held that the executors, and not the trustees, were the proper persons to distribute the fund among the appointees, and that it ought to be paid over to the executors for distribution. He said : " Where the donee of a general power appoints the property to certain persons beneficially, the original trustees were bound to carry the appointment into execution ; but if the donee appointed the property to trustees, those trustees were entitled to receive the property to be held upon the trusts declared by the donee; and when a married woman made a will in the exercise of a power and appointed executors, inasmuch as

she could only make her will by virtue of the power, and could only have appointed the executors for the purpose of administering the appointed property, she must be considered to have appointed the property to the executors as trustees. . . . By the appointment of executors, the duty of administering the fund was, in his opinion, taken away from the original trustees and committed to the executors." In the present case, the active duties of the original trustees terminated with the probate of the will of Mrs. Waite, and their only duty then was to pay over the fund as the testatrix had directed by her will.

The same principle was fully recognized and acted upon in the case of *Hayes* v. *Oatley,* L. R. 14 Eq. Cas. 1. In that case, under a settlement of a sum of £10,000, secured by mortgage, and which was vested in trustees upon trust for E. S., the wife of W. S., for her life, and after her death for W. S. for his life, and subject as aforesaid, upon trust for such persons as E. S. should by deed or will appoint, and in default of appointment for W. S., E. S., the wife, made a will, by which she directed that W. S. should enjoy the income of the fund during his life, subject to payment of two annuities; and she directed certain pecuniary legacies to be paid after the death of W. S. out of one moiety of the fund, and she gave the other moiety of the fund and the residue of her property to W. S., *whom she appointed executor.* The trustees of the settlement paid over the whole trust fund to W. S.; and part of the £5,000 applicable to the payment of the pecuniary legacies was lost. But it was held that the payment over by the trustees to the executor was a full discharge to them. And Lord Romilly, M. R., said : " I entertain no doubt that the trusts of the settlement were completely discharged when the trustees paid over the £10,000 to the executor of Mrs. Stubbs. If it were not so, the trustees would have to carry into effect all the limitations of her will." And so in the present case, if the fund could not be validly paid over by the trustees to the execu-

trix and appointee for life, they would have to hold the fund to carry into effect all the limitations of Mrs. Waite's will. This was clearly never contemplated either by the founders of the trust fund, or by Mrs. Waite in appointing the fund.

In the subsequent case of *In Re Hoskins' Trust*, 5 Ch. Div. 229, before Vice Chancellor Malins, the same principle was followed, upon a state of case very similar to that of *In Re Philbrick's Settlement*; and it was held that the trustees should have paid the fund over to the executors of the will for distribution; and they were ordered to pay the costs, because of their failure so to pay over the fund. In commenting upon the facts of that case, the vice chancellor said : "But the next step taken was to put in not less than sixty-nine folios of printed affidavits for the purpose of showing who the parties were who were entitled to this fund. These were put in by the *cestuis que trust*, but what have they to do with that part of the case ? The executors are the persons entitled to distribute the fund, and it is for them to ascertain who the parties are. Under all these circumstances, the proper course would have been for the trustees to pay the money to the executors."

From the order of the vice chancellor in that case, directing the trustees to pay costs, an appeal was taken; and while an appeal was held not to lie, Jessel, M. R., and James, L. J., did not hesitate to say, that "The law is now settled that where a donee of a general power of appointment over a fund of personalty makes an appointment of the fund by will, and appoints an executor, the executor is entitled to receive the appointed fund." L. R. 6 Ch. Div. 283.

There can be no question at this day that the mere fact of giving the personal estate, or the residue thereof, to one for life, with remainder over to another, does not of itself destroy the right of the legatee or appointee for life to the enjoyment of the property or fund specifically; and where such is the apparent intention of the testator, a court of equity

will secure and protect such enjoyment. *Evans* v. *Iglehart*, 6 G. & J. 171; *Boyd* v. *Boyd*, 6 G. & J. 25; *State* v. *Robinson*, 57 Md. 486–496.

And a bill will not be entertained on the complaint of the remainderman against the legatee for life, for security of the fund, unless it be alleged and proved that there is actual danger of waste or misappropriation of the property. Without such ingredients, says Judge Story (Eq. Jur., Sec. 604), " the remainderman is only entitled to have an inventory of the property bequeathed to him, so that he may be enabled to identify it; and, when his absolute right accrues, to enforce a due delivery of it." But, of course, if danger of waste and misappropriation of the property be shown, a court of equity will be active in affording protection to the remainderman, and will require bond for the preservation and forthcoming of the fund or property when the remainderman may be entitled to receive it.

In this case the complainant has submitted herself to the direction of the court, and it will be within the power of court to prescribe such directions as will preserve the fund, if at any time hereafter it should be made to appear that the interest of those in remainder is in danger of loss.

Entertaining these views of the case, I think the order appealed from ought to be reversed, and the cause be remanded to the court below, with directions that the demurrer be overruled, and that the trustees be required to answer the bill.